# EXHIBIT A

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | § § | Chapter 7 |
| US LOGISTICS SOLUTIONS INC., | § § | Case No. 24-32884 (EVR) |
| Debtor. | § § | |

## DECLARATION OF MIKE S. MANDELL

I, Mike S. Mandell, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct:

1. I, Mike S. Mandell, am above the age of eighteen years, competent to make this declaration and do so based upon my personal knowledge of the facts stated herein.

2. I am the Senior Manager – Stop Loss and Bankruptcy of Ryder Truck Rental, Inc. ("Ryder"). I make this declaration in support of Ryder's *Emergency Motion for Relief from the Automatic Stay* (the "Motion") in the above-referenced bankruptcy case.

3. On or about June 14, 2000, Service Express, Inc., predecessor-in-interest to US Logistics Solutions Inc. (the "Debtor") entered into a commercial Truck Lease and Service Agreement with Ryder, as lessor. Such Truck Lease and Service Agreement was subsequently amended by the Amendment to Truck Lease and Service Agreement and the Amended and Restated Assumption Agreement (TLSA Transfer) both dated as of April 20, 2022. The Truck Lease and Service Agreement, as amended by the foregoing amendments is referred to herein as the "TLSA". A true and correct copy of the TLSA is attached as collective **Exhibit "1"**.

4. The current number of Leased Vehicles under the TLSA is 280 (the "Leased Vehicles").

5. The TLSA is a full service lease, and the Debtor has no equity in the Leased

Vehicles. Ryder is the holder of the certificate of title for, and the legal owner of each of the Leased Vehicles.

6. The Debtor is required to make certain payments to Ryder, as set forth in the TLSA, for the use by the Debtor of the Leased Vehicles, and all other included goods and services.

7. On a prepetition basis, the Debtor was in default to Ryder in the amount of at least $615,447.66.

8. On information and belief, some of the Leased Vehicles are located at the Debtor's truck lots with no security in place to prevent unauthorized people to enter the premises.

9. The Leased Vehicles are worth millions of dollars.

I declare under penalty of perjury that the foregoing is true and correct.

Dated this 25th day of June 2024.

DocuSigned by:

*Mike S. Mandell*
MIKE S. MANDELL

 

# Truck Lease and Service Agreement

This Agreement is dated as of __June 14, 2000__, _____ and is by and between **RYDER TRUCK RENTAL, INC. d/b/a RYDER TRANSPORTATION SERVICES**, whose address is __615 Simuel Road Spartanburg, SC 29301__ (Ryder) and __Service Express, Inc.__, whose address is _____ __197 E Ridgeview Center Drive Duncan, SC 29334__ (You/Yours).

## 1. Equipment Covered and Term

**A. Agreement.** Ryder agrees to lease the Vehicles to you, and you agree to lease the Vehicles from Ryder. Selected terms are defined in the Defined Terms Section that appears at the end of this Agreement.

**B. Schedule A(s).** The Schedule A(s) contain information regarding the Vehicles selected by you pursuant to this Agreement. When you sign a Schedule A, you authorize Ryder to obtain the Vehicles listed on that Schedule A and agree to take delivery of them.

**C. Lease Term.** The lease term for a Vehicle will begin when Ryder tenders the Vehicle to you and will last for the period specified on its Schedule A unless the lease term is terminated earlier as permitted by this Agreement. At the end of the lease term, you agree to return the Vehicles to the Maintenance Facility. If you operate any Vehicle after its lease term has ended, the terms of this Agreement will apply to the hold-over lease, but Ryder will have the right to terminate the hold-over lease 7 days after Ryder sends you notice. Ryder shall not be required to send you this termination notice if you have failed to cure an outstanding default under this Agreement or if Ryder has previously sent you a termination notice covering that Vehicle.

**D. Vehicle Specifications, Alterations, and Equipment.** Once you accept a Vehicle in service, you agree that it conforms to the Vehicle specifications and is in good working order. You agree not to alter the structure of the Vehicle unless you first obtain Ryder's consent, and you agree to pay for all structural alterations, special equipment, and all changes in painting, lettering, and art work that you make or request Ryder to make after you sign the Schedule A. If a law or regulation changes after you sign a Schedule A so that additional or new equipment must be installed on a Vehicle, Ryder will perform the installation and you agree to pay Ryder for all costs and installation expenses.

## 2. Services That Ryder Provides to the Vehicles

**A. Maintenance and Repairs to Vehicles.** Ryder agrees to provide lubricants, tires, tubes, and all other operating supplies for the Vehicles. Ryder also agrees to perform all maintenance and repairs to the Vehicles and agrees to supply all labor and parts required to keep the Vehicles in service and ready for your use.

*(1) Maintenance and Repair Schedule.* You agree to return each Vehicle to Ryder at the Maintenance Facility for at least 8 hours per month for preventive maintenance at the scheduled times agreed to by both of us. You agree to notify Ryder immediately when any repairs are necessary. If additional maintenance is required, you agree to bring the Vehicle to Ryder at mutually agreeable times.

*(2) Repairs Performed by Third Parties.* Ryder and the parties that Ryder expressly authorizes are the only ones who may repair, maintain, or adjust a Vehicle. Before you have a third party repair or make adjustments to a Vehicle, you agree to obtain Ryder's consent. Ryder will not pay for unauthorized repairs. You agree to provide Ryder with proper documents, such as receipts, to obtain reimbursement from Ryder for all repairs that Ryder authorizes.

**B. Vehicle Washing.** Where Ryder is designated on the Schedule A, Ryder will wash the exterior of the Vehicles listed on that Schedule A as frequently as stated on that Schedule A.

**C. Specification Assistance.** Ryder agrees to attempt to assist you in selecting specifications for the Vehicles chosen by you by helping you to identify the types and physical characteristics of vehicles and equipment suited to your business needs given economic, safety, and performance considerations. Nevertheless, you agree that you retain sole and ultimate responsibility for selecting specifications for the Vehicles.

**D. Substitute Vehicles.** If a mechanical failure renders a Vehicle temporarily inoperable, Ryder agrees to supply you with a Substitute Vehicle at no extra charge, except for mileage charges, fuel charges, and other variable charges. All Substitute Vehicles will be governed by this Agreement.

*(1) When Ryder Will Not Provide a Substitute Vehicle.* Ryder will not furnish a Substitute Vehicle for any Vehicle that is out of service for any preventive maintenance; if a Vehicle is out of service for repair of any physical damage resulting from any cause, including fire, collision, upset, vandalism or an Act of God; if you violate this Agreement and a Vehicle becomes inoperable as a result; if a Vehicle is lost or stolen; if a Vehicle is specialized; or if a Vehicle is out of service for repair or maintenance of special equipment and Ryder is not responsible for maintaining that equipment.

*(2) Size of Substitute Vehicle; Delivery and Drop-off.* The Substitute Vehicle will be as nearly as practicable the same size as the Vehicle. Ryder agrees to provide the Substitute Vehicle where the Vehicle was disabled and you agree to return it to the facility that provided it.

*(3) Failure to Provide a Substitute Vehicle.* If Ryder is obligated to provide a Substitute Vehicle and fails to do so within a reasonable period of time, then the charges for the inoperable Vehicle will abate until Ryder either returns the Vehicle to you or provides a Substitute Vehicle. This abatement shall be Ryder's only liability to you if Ryder fails to provide a Substitute Vehicle.

**E. Replacement Rental Vehicles for Physical Damage.** While physical damage to a Vehicle is being repaired, Ryder agrees to rent you a Replacement Rental Vehicle if one is available in Ryder's rental fleet. The rental rate for the Replacement Rental Vehicle will be equal to (and billed in addition to) the lease charges on the inoperable Vehicle. Before you take possession of the Replacement Rental Vehicle, you agree to sign Ryder's standard rental agreement. In all instances, and regardless of whether you rent a Replacement Rental Vehicle, the charges on the damaged Vehicle will continue to accrue during the period of time that the damage is being repaired.

**F. Extra Rental Vehicles.** Subject to availability in Ryder's rental fleet, Ryder will rent Extra Rental Vehicles to you for short-term use. Ryder agrees to rent you an Extra Rental Vehicle at Ryder's standard rental rate at the time of the rental less 15%. All rental rates for Extra Rental Vehicles shall be computed based on a 5-day week. Before you take possession of the Extra Rental Vehicle, you agree to sign Ryder's standard rental agreement.

**G. Emergency Road Service.** Ryder agrees to provide road service for mechanical or tire failure. However, you agree to be responsible for all expenses of towing any Vehicle which becomes mired when not in Ryder's possession or on Ryder's premises, and for any Vehicle which becomes mired as a result of driver abuse or a violation of this Agreement.

**H. Painting and Lettering.** Ryder agrees to pay for painting and lettering the Vehicles prior to delivery. There is an allowance for this initial painting and lettering on each Schedule A, but if the cost of the painting and lettering exceeds that allowance, the lease charges will be adjusted as described on the Schedule A to reflect the excess.

**I. Licensing and Taxes.** Ryder agrees to pay for the following items for each Vehicle, but only up to the annual allowance for each item listed on Schedule A: the state motor vehicle license for the licensed weight shown on Schedule A, registration fees, and vehicle inspection fees in the state of

domicile; personal property taxes in the state of domicile; and Federal Heavy Vehicle Use Taxes. If the cost of any of these items exceeds the annual allowance listed on Schedule A in any year, then you agree to pay Ryder the excess. You also agree to pay for any increase or change in method of assessment of any of these items that becomes effective after the date that a Schedule A is signed. Any blank allowance line on a Schedule A shall be deemed to be a $0 annual allowance. You agree to provide Ryder with all documentation required for vehicle licensing (including trip records) on a weekly basis. If you provide Ryder with inaccurate information or provide information late, you agree to reimburse Ryder for any charges, penalties, or expenses. In addition, Ryder shall have the right by providing you with 30 days prior notice, to no longer apply for vehicle licenses on the Vehicles.

J. **Safety Program.** At your request, Ryder will provide you with its then-current standard safety program.

## 3. Providing Fuel

A. **Provision of Fuel by Ryder.** When Ryder is designated on the Schedule A, Ryder will provide fuel for the Vehicles listed on that Schedule A from Ryder's or designated facilities. The charge for fuel will vary over time. Ryder will bill you for fuel in addition to the lease rates listed on each Schedule A. If your account is past-due, Ryder may elect to stop providing fuel to you 3 days from the date that Ryder sends notice to you. You will be responsible for the cost of all fuel obtained from sources other than Ryder or Ryder's designated facilities.

B. **Fuel Tax Permits and Reporting.** Where Ryder is designated on Schedule A to provide fuel, Ryder agrees to apply and pay for fuel tax permits for the Vehicles listed on that Schedule A, where it is legal to do so, up to the annual allowance on that Schedule A. If the cost of the fuel tax permits exceeds the annual allowance in any year, then you agree to pay Ryder the excess. Where Ryder is designated on the Schedule A to provide fuel, Ryder also agrees to prepare and file fuel tax returns and pay fuel taxes imposed on the consumption of fuel by the Vehicles listed on that Schedule A where it is legal to do so.

*(1) Required Documentation.* If Ryder prepares the returns and pays the taxes, you agree to provide Ryder with all necessary documentation (including trip records and fuel tickets) on a weekly basis. If you provide Ryder with inaccurate information or documentation, or provide information or documentation late, you agree to: (i) reimburse Ryder for any charges, penalties, expenses, or disallowed credits; and (ii) pay Ryder an amount equal to the estimated taxes computed on a per mile basis. In addition, Ryder shall have the right, by providing you with 30 days notice to stop doing either or both of the following: (i) applying and paying for fuel tax permits for the Vehicles listed on Schedule A; and (ii) filing fuel tax returns and paying fuel taxes imposed on your consumption of fuel for the Vehicles listed on Schedule A. You shall then defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs resulting from your failure to pay fuel taxes.

*(2) Reimbursement of Fuel Taxes.* You will reimburse Ryder for all fuel taxes paid by Ryder on your behalf, including, but not limited to, all additional fuel taxes resulting from your consumption of fuel in a state other than the state in which the fuel was purchased and all taxes that may become due based on the documents you provide.

C. **If You Provide Fuel.** You may choose to provide your own fuel. If you fail to pay fuel taxes, you agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs.

## 4. Operation of Vehicles

A. **Operation for Business Purposes and in Compliance with the Law.** You agree to operate the Vehicles in the normal and ordinary course of your business and in compliance with all federal, state, and local laws and regulations (including weight and size limits). You agree not to use the Vehicles to carry passengers.

B. **Operation within the United States and Canada.** You agree to operate the Vehicles only within the United States and occasionally in Canada. If you desire to operate the Vehicles in any other foreign country, you agree to first obtain Ryder's prior permission. If you operate a Vehicle in a foreign country and it is held there for any reason, you agree to remain liable for the Vehicle and all charges that accrue while it is detained.

C. **Operation with Vehicles Owned by You.** If you use a Vehicle while it is connected to a trailer or other equipment that Ryder does not lease to you or maintain for you, you agree to keep that trailer and equipment in good operating condition.

D. **Prohibited Operation.** You agree not to use or operate Vehicles, Substitute Vehicles, or rental vehicles in a reckless or abusive manner, in violation of the manufacturer's recommendations, off an improved road, on a flat tire, improperly loaded, or loaded beyond the manufacturer's recommended maximum gross weight. You agree not to use any Vehicle, Substitute Vehicle, or rental vehicle to transport Hazardous Material. Regardless of any other provision of this Agreement, and even if Ryder is designated on Schedule A as responsible for Physical Damage, you will pay Ryder for all physical damage, repairs, maintenance, and related expenses resulting from any violation of this paragraph.

## 5. Drivers

A. **Driver Qualifications.** Only properly licensed drivers who are at least 18 years old may drive a Vehicle or Substitute Vehicle. All drivers must be your employees or agents who are subject to your exclusive direction and control. Drivers are not allowed to operate a Vehicle or Substitute Vehicle if they either possess or are under the influence of any alcohol or drug. If a driver operates a Vehicle or Substitute Vehicle in violation of this paragraph, you agree to defend, release, indemnify, and hold Ryder harmless for all resulting Damages and Defense Costs. Every year and on Ryder's reasonable request, you agree to provide Ryder with a current driver roster in a form reasonably satisfactory to Ryder.

B. **Driver Removal.** If a driver operates a Vehicle or Substitute Vehicle in a reckless, abusive, illegal, or incompetent manner, Ryder may send you a notice requesting you to remove that driver as an operator of the Vehicles and Substitute Vehicles. Upon receipt of the notice, you will immediately remove the driver as an operator of the Vehicles and Substitute Vehicles.

*(1) Failure to Remove Driver.* If you do not remove that individual as a driver or are prevented from doing so by any agreement with any one on the driver's behalf, then you agree to reimburse Ryder for any damage to any Vehicle, Substitute Vehicle, or rental vehicle that occurs while being driven by that individual even if Ryder otherwise has responsibility for payment of Physical Damage on or to that Vehicle, Substitute Vehicle, or rental vehicle. Also, even if Ryder extends Liability Insurance or another provision in this Agreement would otherwise apply, you agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs that result while that driver operates any Vehicle, Substitute Vehicle, or rental vehicle.

*(2) Cancellation of Liability Insurance that Ryder Extends.* If you deny Ryder's request to remove a driver, Ryder may cancel any Liability Insurance that Ryder extends on any Vehicle or Substitute Vehicle by providing you with 30 days notice.

*(3) Change of Physical Damage Responsibility.* If you deny Ryder's request to remove a driver, Ryder may also designate you as the party responsible for all Physical Damage to the Vehicles by providing you with 30 days notice. Your Physical Damage responsibility for each Vehicle will then be equal to its Schedule A Value, and you agree to provide Ryder with proof of physical damage insurance coverage described in Paragraph 11B(2).

## 6. Vehicle Expenses that You are Responsible For

A. **Taxes.** You agree to pay for all taxes, fees, and tolls resulting from the use or operation of the Vehicles or accruing on the lease, rental, or other charges under this Agreement, other than those that Ryder agrees to pay for in Paragraph 2I. The taxes that you are responsible for include any sales, use,



### 13. Cargo Loss Responsibility

Ryder will not be liable for loss of or damage to Cargo, even if the loss or damage occurs on Ryder's premises or is caused by Ryder's negligence or any other failure on Ryder's part. You agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs arising out of or related to loss or damage to Cargo. You also agree to reimburse Ryder for loss of any tools, tarpaulins, spare tires, or other similar equipment furnished by Ryder.

### 14. Termination

**A. Annual Termination Rights.** Either party may terminate the lease on any Vehicle on any annual anniversary date of its Date of Delivery listed on its Schedule A before its full lease term expires by giving the other party at least 60 days prior notice. If Ryder terminates the lease on any Vehicles and you are not then in default, you will have the right, but not the obligation, to purchase all of those terminated Vehicles on the effective date of their termination in accordance with Paragraph 16A, by giving Ryder at least 30 days prior notice. If you terminate the lease on any Vehicles, you will, at Ryder's option, purchase all of those Vehicles on their effective date of termination in accordance with Paragraph 16A.

**B. Insolvency and Bankruptcy.** If you become insolvent, file a voluntary petition in bankruptcy, make an assignment for the benefit of creditors, are adjudicated bankrupt, permit a receiver to be appointed for your business, or permit or suffer a material disposition of your assets, the lease of Vehicles will terminate at Ryder's option. Upon termination, Ryder may, at its option, demand that you purchase the Vehicles within 10 days as described in Paragraph 16A.

**C. Vehicle Condition at Expiration of Lease.** Upon termination or expiration of the lease term, you agree to return each Vehicle to Ryder with no broken glass and with no sheet metal, component, or structural damage. If you have made any structural alteration to the Vehicle, you agree, at Ryder's option, to restore it to its original condition before you return it to Ryder.

### 15. Breach or Default

**A. Default Procedure.** If you breach this Agreement, then Ryder may send you a notice of default. You will have 7 days from the date that Ryder sends you the default notice to cure the default.

**B. Repossession.** If you fail to cure a default as required by Paragraph 15A, then Ryder may immediately take possession of any or all of the Vehicles and Substitute Vehicles wherever they may be located, without prejudice to Ryder's other remedies under this Agreement, at law, or in equity. Ryder will not send you any further demand or notice before Ryder repossesses the Vehicles and Substitute Vehicles and will be entitled to enter any premises to remove them.

*(1) Liability for Charges.* Repossession of the Vehicles will not automatically terminate the Agreement. You agree to continue to be liable for all charges that accrue during the period that Ryder retains the Vehicles.

*(2) Property in a Vehicle at the Time of Repossession.* If at the time that Ryder repossesses a Vehicle there is property in that Vehicle, then Ryder will either hold that property until you claim it or will place it in public storage at your sole risk and expense. If you do not claim the property within 60 days of the repossession, we may elect to donate it to a charity, sell it or destroy it, in our sole judgment.

**C. Termination of the Agreement and Purchase of the Vehicles.** If you fail to cure a default as required by Paragraph 15A, Ryder may terminate this Agreement as to any or all of the Vehicles. Once Ryder terminates this Agreement, Ryder may require you to purchase any or all of the terminated Vehicle by sending you a demand, without prejudice to Ryder's other remedies under this Agreement, at law, or in equity. You agree to purchase all of those terminated Vehicles designated by Ryder within 10 days of the date of Ryder's demand at a purchase price established by Paragraph 16A.

**D. Attorneys Fees.** If Ryder takes any action to enforce any of Ryder's rights under this Agreement or to collect amounts owed to Ryder by you, you agree to pay all of Ryder's costs and expenses in doing so. These costs will include, but not be limited to, Ryder's reasonable attorneys' fees at both the trial and appellate level, and fees and costs paid to any collection agency.

**E. Default under a Rental Agreement.** If you are in default under any rental agreement with Ryder, you will also be in default under this Agreement. If you are in default under this Agreement, you will also be in default under any rental agreement with Ryder.

### 16. Vehicle Purchases

**A. Vehicle Purchase Price and Procedures.** If you are required or elect to purchase a Vehicle under this Agreement, the purchase price will be equal to its Schedule A Value plus any sales or use tax resulting from the sale. You agree to also pay Ryder on the purchase date any outstanding charges you owe. You agree to pay Ryder in cash or by certified cashier's check on the date provided in this Agreement. Each Vehicle will be purchased "as is, where is" without any warranties or representations on Ryder's part.

**B. Failure to Purchase a Vehicle.** If you fail to purchase a Vehicle when required to do so, Ryder may, at Ryder's option, obtain 3 wholesale bids from willing and able buyers for cash for each Vehicle and will compare the highest bid for that Vehicle to its Schedule A Value. If the highest bid for a Vehicle is less than its Schedule A Value, then you agree to pay Ryder the difference between the highest bid and the Vehicle's Schedule A Value in cash within 5 days of the date of Ryder's demand, in lieu of your obligation to purchase that Vehicle, but otherwise without prejudice to Ryder's other remedies under this Agreement, at law, or in equity. Ryder will have no obligation to actually sell the Vehicle to the highest bidder.

**C. Expiration of the Lease Term.** You will have no right or obligation to purchase a Vehicle when its full lease term expires.

### 17. Miscellaneous Provisions

**A. Assignment of Lease.** This Agreement will be binding on both of us, and both of our successors, legal representatives, and permitted assigns. YOU DO NOT HAVE THE RIGHT TO SUBLEASE ANY OF THE VEHICLES, NOR THE RIGHT TO ASSIGN THIS AGREEMENT OR ANY INTEREST UNDER THIS AGREEMENT WITHOUT RYDER'S PRIOR WRITTEN CONSENT. ANY ATTEMPT TO DO SO WILL BE VOID. Unless Ryder expressly releases you from your obligations in Ryder's consent to the assignment or sublease, you agree to remain liable for all of your and the assignee's or sublessee's obligations under this Agreement.

**B. Changes in Ownership or Sales of Assets.** Before you change ownership or dispose of a substantial amount of your assets, you agree to promptly notify Ryder in writing.

**C. Force Majeure and Charges.** Ryder will not be liable to you if Ryder is prevented from performing under this Agreement by any present or future cause beyond Ryder's control. These causes include, but are not limited to, Acts of God, national emergencies, wars, riots, fires, labor disputes, federal, state, or local laws, rules or regulations, shortages (local or national), or fuel allocation programs. Even if Ryder is unable to perform, your obligations under this Agreement will continue. Except for the lease charges listed on Schedule A, all charges for goods or services under this Agreement, including any services subcontracted by Ryder, will be billed per Ryder's retail sales and service procedures and charges then in effect.

**D. Waiver of Consequential Damages/Lost Profits.** YOU WAIVE AND RELEASE RYDER FROM ANY AND ALL CLAIMS OR LIABILITY FOR ANY AND ALL INDIRECT, INCIDENTAL, SPECIAL OR CONSEQUENTIAL DAMAGES, INCLUDING, BUT NOT LIMITED TO, LOST PROFITS.

E. **Indemnification for Damages in Excess of Liability Insurance, Injuries to Employees and Agents, and for a Violation of this Agreement.** You agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs: (1) in excess of or not covered by Liability Insurance (whether provided by you or Ryder) arising out of or related to the ownership, maintenance, use, or operation of any Vehicle or Substitute Vehicle; (2) arising out of or related to death or injury to you, your drivers, employees, and agents caused by or related to the ownership, maintenance, use, or operation of a Vehicle or Substitute Vehicle; or (3) arising out of or related to your violation of this Agreement.

F. **Indemnification for Statutory Insurance Requirements or Insurer Insolvency.** You agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs which Ryder may be required to pay as a result of any statutory requirements of insurance or as a result of the insolvency of your insurance company and which Ryder would not otherwise be required to pay under this Agreement.

G. **Indemnification for Transportation of Hazardous Material.** Even if Ryder is designated as responsible for providing Liability Insurance on the Schedule A, if you use any Vehicle, Substitute Vehicle, or rental vehicle to transport any Hazardous Material, then you agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs arising out of or related to any cause, including, but not limited to, your negligence, Ryder's negligence, any other failure on your part, or any other failure on Ryder's part. Nothing in this paragraph will authorize you to transport Hazardous Materials in any Vehicle, Substitute Vehicle, or rental vehicle, which shall still be a breach of this Agreement.

H. **Filing Evidence of Liability Insurance.** When Ryder is designated as responsible for Liability Insurance, Ryder will, at your request and where required and legal, file required evidence of automobile liability insurance. Ryder agrees to file the certificates of automobile insurance that are required by you in the normal operation of your business in a form acceptable to Ryder. You agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs arising out of or related to payment of losses by Ryder or Ryder's insurer based on the fact that the documents or certificates have been filed or issued, where the loss would not have otherwise been paid except for the existence of such filing or certificate.

I. **Reimbursement for Clean-up Costs Associated with Fuel Spills.** If you provide the Liability Insurance and Ryder responds to a traffic accident which has resulted in an environmental spill or release from a Vehicle's or Substitute Vehicle's fuel tank(s) or engine, you agree to pay for and/or reimburse Ryder for all out-of-pocket costs and expenses arising out of or related to the spill or release, including, but not limited to, the cost of emergency response contractors, environmental clean up and disposal costs, fines, and penalties.

## 11. Physical Damage to Leased and Substitute Vehicles

The party shown on the Schedule A will pay for all Physical Damage (including theft and loss) to the Vehicles listed on that Schedule A and to any Substitute Vehicle provided for those Vehicles.

**A. When Ryder is Designated on the Schedule A:**

*(1) Payment of Physical Damage.* Ryder agrees to assume and pay for Physical Damage to each Vehicle or Substitute Vehicle in excess of the deductible amount per occurrence specified on the Schedule A. You agree to pay up to the deductible amount specified on the Schedule A for each occurrence.

*(2) Exclusions.* Even if Ryder is designated on the Schedule A, Ryder will not pay for any loss or damage to a Vehicle or Substitute Vehicle that results from a violation of Paragraph 4 or for any willful damage to a Vehicle or Substitute Vehicle, specifically including, but not limited to, damage arising out of or in connection with any labor dispute that you are involved in. Further, Ryder will not pay for the theft of any Vehicle or Substitute Vehicle by one of your agents or employees, nor will Ryder pay for the loss of tools, tarpaulins, accessories, spare tires, or other similar items. If a Vehicle is lost, damaged beyond economic repair, or stolen as a result of one of the exceptions in this paragraph, you agree to pay Ryder an amount equal to its Schedule A Value.

*(3) Retention of Salvage.* Ryder will be entitled, at its option, to retain the salvage of any Vehicle or Substitute Vehicle, in which case Ryder will deduct the salvage value from the amount that you agree to pay to Ryder under Paragraph 11A(2) of this Agreement.

*(4) Termination of Physical Damage Responsibility.* If Ryder is responsible for paying for Physical Damage, then Ryder can terminate that responsibility by providing you with at least 30 days prior notice. After that 30 day notice period, you agree to be responsible for all Physical Damage to the Vehicles and Substitute Vehicles as described in Paragraph 11B. After Ryder provides you with notice of termination, you agree to obtain and maintain Physical Damage insurance on the Vehicles and Substitute Vehicles. This Physical Damage insurance must be in a form and amount that is reasonably acceptable to Ryder. Ryder will then decrease your lease charges to reflect the change in Physical Damage responsibility. If you fail to obtain and maintain Physical Damage insurance, or if you fail to provide Ryder with certificates evidencing that insurance, then you agree to pay Ryder for all Physical Damage to any Vehicle or Substitute Vehicle as described in Paragraph 11B. In the event that a Vehicle is damaged beyond economic repair or is lost or stolen, the amount that you agree to pay Ryder will be determined by Paragraph 16A. If Ryder is responsible for paying for Physical Damage, Ryder may periodically review and adjust its rates therefor during the term of this agreement by providing you with not less than 30 days prior notice.

**B. When You Are Designated on the Schedule A:**

*(1) Payment of Physical Damage.* You agree to pay for all Physical Damage (including theft and loss) to any Vehicle or Substitute Vehicle, including related expenses, even if the Physical Damage results from Ryder's negligence or occurs on Ryder's premises. If a Vehicle is lost, stolen, or damaged beyond economic repair, then you agree to pay Ryder its purchase price at the time of the loss or damage as determined by Paragraph 16A, plus the other amounts mentioned in that paragraph. Ryder may inspect and approve all physical damage repairs performed by any repair shop which has not been approved by Ryder once they are completed. If a physical damage repair performed by any such unapproved repair shop does not meet the vehicle manufacturer's specifications or is otherwise faulty, then Ryder may rework the repair so that it satisfies those specifications and is properly performed at your expense in addition to all other charges under this Agreement.

*(2) Insurance Certificates.* You agree to furnish Ryder with evidence of Physical Damage insurance coverage reasonably acceptable to Ryder listing Ryder as a named insured or endorsed as a loss payee.

*(3) Retention of Salvage.* Ryder will be entitled, at its option, to retain the salvage of any Vehicle or Substitute Vehicle, in which case Ryder will deduct the salvage value from the amount that you agree to pay to Ryder under this Agreement.

**C. Vehicle Theft or Destruction.** If a Vehicle is lost or stolen, you agree to immediately notify Ryder. If it is still missing 30 days after you have notified Ryder, then the lease on that Vehicle will terminate. However, before the lease terminates, you must pay Ryder any amounts owed for the Vehicle as of termination and any amounts owed to Ryder under Paragraph 11. Ryder will not be obligated to provide a Substitute Vehicle during this 30 day period.

If a Vehicle is involved in a collision or accident, you agree to immediately notify Ryder, and within 30 days, Ryder will decide whether that Vehicle is damaged beyond economic repair. If the Vehicle is damaged beyond economic repair, the lease on that Vehicle will terminate once you pay Ryder all of the charges owed for the Vehicle and all amounts owed under Paragraph 11.

## 12. Notice of Accident

If an accident, collision, theft, loss, or damage occurs involving any Vehicle or Substitute Vehicle, you agree to immediately notify Ryder, cause your driver to make a report in person at Ryder's office as soon as practicable, and agree to return the Vehicle or Substitute Vehicle to the Maintenance Facility upon Ryder's request. You agree to also provide Ryder with copies of any reports that you have provided to your insurer or any governmental agency and assist Ryder and the insurer in the investigation, defense, or prosecution of any claims or suits.

excise, gross receipts or any similar tax; any special license or taxes resulting from the operation and use of the Vehicles by you, including mileage taxes, ton mileage taxes, highway or bridge tolls; and any new or additional taxes or fees adopted after you sign the Schedule A.

   B. **Excess over Schedule A Annual Allowance Amounts.** You agree to be responsible for any excess over the annual allowances listed on the Schedule A during each year for each of the following items for each Vehicle: state motor vehicle license, registration fees, and vehicle inspection fees; personal property taxes; Federal Heavy Vehicle Use Taxes; and fuel tax permits. You also agree to pay for any increase or change in method of assessment in any of these items that becomes effective after the date that a Schedule A is signed.

   C. **Failure to Pay Taxes.** If you fail to pay any taxes, fees, or tolls, and your failure results in a claim or lien involving any Vehicle, then Ryder may settle the claim or lien, and you agree to immediately reimburse Ryder for doing so.

   D. **Additional Repairs.** Regardless of any other provision of this Agreement, you agree to pay for all damage, repairs, maintenance, and related expenses resulting from your operation of a Vehicle or Substitute Vehicle in violation of this Agreement at Ryder's retail sales and service rates then in effect at the facility performing the repairs or maintenance.

## 7. Computation of Charges and Payment.

   A. **Payment Terms.** You agree to pay the full amount of any invoice billed by Ryder within 10 days of the date of Ryder's invoice. Deductions or offsets from the invoice amount are not permitted.

   B. **Incorrect Invoices.** If an invoice is incorrect, then you agree to notify Ryder within 90 days of its date, or it will be conclusively presumed to be correct.

   C. **Determination of Mileage and Refrigeration Charges.** Ryder will determine mileage for powered Vehicles from odometer readings, mileage for trailers from hubodometer readings, and hours of operation of all refrigerated units from the hour meter(s). If the odometer, hubodometer, or hour meter(s) fails to function, you agree to immediately report that failure to Ryder. Ryder will then determine mileage or the hours of operation for the period in which the failure existed at Ryder's option from (1) your trip records or (2) the average amount of fuel consumed and the miles per gallon shown in Ryder's records for the previous 30 days.

## 8. Financial Statements and Confidentiality

   A. **Financial Statements.** You agree to provide Ryder with fully disclosed, year-end financial statements and other financial information on an annual basis.

   B. **Confidentiality.** You agree to maintain the confidentiality of the terms and rates contained in this Agreement, and agree not to disclose the rates and terms unless required by law.

## 9. Adjustment of Charges

The charges in this Agreement are based on Ryder's current costs for labor, parts, supplies, and overhead items, which may change after a Schedule A is signed. Each year, on the dates listed on a Schedule A, Ryder will adjust your charges on each Vehicle upward or downward to reflect changes in Ryder's costs. These adjustments will be computed based on the percentage change in the Revised Consumer Price Index for Urban Wage Earners and Clerical Workers (1967 base period) published by the U.S. Bureau of Labor Statistics (or any successor index designated by Ryder) over or under the Base Index listed on the Schedule A. Ryder will round this percentage change in CPI to the nearest tenth of one-percent and will then increase or decrease your charges by an amount equal to this rounded percentage change in CPI (positive or negative) multiplied by the portion of the charges listed below:

   *50% of the Fixed Charge Per Month (or Week) and 100% of the Mileage Rate Per Mile
   *60% of the Mileage Rate Per Mile (including Mileage Guaranty) for "Mileage Only" Rated Vehicles
   *100% of the Refrigerated Maintenance Rate Per Hour (for refrigeration equipment)
   Adjustments will be computed based on the original charges and the latest CPI index published prior to the effective date of implementation.

## 10. Liability Insurance and Indemnity

   A. **Liability Insurance.** The party designated on Schedule A agrees to furnish and maintain a policy of automobile liability insurance at its sole cost with terms acceptable to Ryder and with limits per occurrence specified on each Schedule A for bodily injury and property damage liability, covering you and Ryder as insureds for the ownership, maintenance, use, and operation of the Vehicles and the Substitute Vehicles. If Ryder extends the Liability Insurance, then this Agreement shall incorporate all of the terms and conditions of the policy of Liability Insurance.

   *(1) Additional Insured Status.* If Ryder extends the Liability Insurance, then Ryder agrees to name you as an additional insured on the Liability Insurance for the ownership, maintenance, use, and operation of the Vehicles and the Substitute Vehicles. If you provide the Liability Insurance, then you agree to name Ryder as an additional insured on the Liability Insurance for the ownership, maintenance, use, and operation of the Vehicles and the Substitute Vehicles. If Ryder is obligated to furnish and maintain Liability Insurance covering you as an insured, the Liability Insurance will exclude uninsured or underinsured motorist coverage, personal injury protection coverage, medical payment coverage, and/or supplementary no fault coverage. If any of these coverages cannot be rejected, waived, or excluded under the law of any applicable state, or if rejection, waiver, or exclusion is otherwise unenforceable, the coverage will only be provided to the extent and with the minimum limits required by the laws of that state.

   *(2) Primary Coverage and Notice of Cancellation.* The Liability Insurance must provide that its coverage is primary and not additional or excess coverage over insurance otherwise available to either of us. In addition, the Liability Insurance must be written by a company satisfactory to Ryder and provide that it cannot be canceled or materially altered without 30 days prior notice to both of us.

   B. **Insurance Certificates.** The party designated on the Schedule A agrees to furnish the other party with insurance certificates to prove compliance with Paragraph 10A.

   C. **Termination of Liability Insurance Extended by Ryder.** If Ryder extends its Liability Insurance, Ryder may periodically review and adjust its rates therefor during the term of this agreement, and also may withdraw such coverage, by providing you in either event with not less than 30 days prior notice. You agree to then obtain and maintain Liability Insurance in the limits listed on the Schedule A as of the effective date of termination, and your lease charges will be adjusted accordingly.

   D. **Indemnification for Failure to Procure or Maintain Liability Insurance.** If you are obligated to procure and maintain the Liability Insurance and fail to do so (or if you fail to provide Ryder with the required evidence of Liability Insurance), you agree to defend, release, indemnify, and hold Ryder harmless for all Damages and Defense Costs arising out of or related to the ownership, maintenance, use, or operation of any Vehicle or Substitute Vehicle. In addition, Ryder may, at Ryder's option, obtain Liability Insurance which may protect Ryder's interests only. If Ryder chooses to procure the Liability Insurance, you agree to pay to Ryder any costs or expenses incurred by Ryder in procuring the Liability Insurance. Ryder will bill these costs to you as additional rental charges.

**E. Notices.** Any notice, demand, consent or request for consent under this Agreement must be written and sent to you or Ryder at the address listed on the cover page of this Agreement (or any new address of which notice is given). Notices shall be given by certified mail (with a return receipt), overnight delivery service, facsimile transmission (if a written record of either a machine generated or verbal telephonic confirmation is obtained), or hand-delivery. Notices will be effective when sent, unless otherwise specified in this Agreement.

**F. Savings Clause.** If a court rules that any one or more provisions of this Agreement are illegal, invalid, or unenforceable, the remainder of that provision and all of the other provisions will remain binding, effective, and fully enforceable.

**G. Waiver of Rights and Defaults.** If Ryder delays or fails to exercise any of its rights under this Agreement, or if Ryder partially exercises any right, it will not have thereby waived any rights. By failing to declare or act on a default, Ryder does not waive that default. Ryder may act on that default at any time. **BOTH OF US WAIVE ANY RIGHT TO A TRIAL BY A JURY IN ANY LAWSUIT RELATING TO THE TRANSACTIONS CONTEMPLATED BY THIS AGREEMENT.**

**H. Cumulative Remedies.** Except as described in Paragraph 16B, all of Ryder's remedies in this Agreement are cumulative and non-exclusive. Ryder may exercise any remedy without affecting Ryder's right to exercise any other remedy and without impacting Ryder's right to bring suit for your breach or Ryder's other remedies at law.

**I. Content and Modification of Agreement.** Ryder will not be bound by this Agreement until one of Ryder's duly authorized representatives signs it. After Ryder signs this Agreement, this Agreement will become the entire agreement and understanding between both of us concerning the subjects contained in this Agreement. All previous written or oral agreements and representations regarding the subjects contained in this Agreement will be null and void. The only way to change this Agreement is through a written amendment or additional Schedule A(s) signed by both of our duly authorized representatives. Any attempt at oral modification or modification through course of performance shall be void.

**J. Indemnification and Release of Ryder's Insurers.** Wherever you agree to defend, release, indemnify, or hold Ryder harmless from Damages or Defense Costs in this Agreement, you also agree to defend, release, indemnify, and hold Ryder's insurers harmless from any liability for those Damages and Defense Costs.

**K. Disclaimer of Warranties. RYDER MAKES NO EXPRESS OR IMPLIED WARRANTY REGARDING THE VEHICLES, CHARGES, OR ANY OTHER MATTER WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY THAT THE VEHICLES ARE MERCHANTABLE OR FIT FOR A PARTICULAR PURPOSE OR SPECIAL PURPOSE.**

**L. Survivability.** All of the defense, release, indemnification, and hold harmless provisions of this Agreement shall survive the termination or expiration of this Agreement for any reason.

## 18. Defined Terms

**A. Base Index:** The Consumer Price Index placed on each Schedule A at the time that the Schedule A is executed that serves as the basis for computing adjustments to the lease charges as described in Paragraph 9.

**B. Both of us/our:** The lessee under this Agreement and Ryder Truck Rental, Inc., d.b.a. Ryder Transportation Services.

**C. Cargo:** Any goods or property in, carried on, or towed by any Vehicle or Substitute Vehicle.

**D. CPI:** The Revised Consumer Price Index for Urban Wage Earners and Clerical Workers (1967 base period) published by U.S. Bureau of Labor Statistics or any successor index designated by Ryder.

**E. Damages:** All damages, claims, suits, causes of action, penalties, fees, costs, expenses and liabilities for death or injury to persons and loss or damage to property, including, but not limited to, damage to the environment and all environmental clean-up costs.

**F. Defense Costs:** All attorneys' fees, experts' fees, and court costs at trial and on appeal.

**G. Either of us:** Ryder Truck Rental, Inc., d.b.a. Ryder Transportation Services or you, the lessee under this Agreement.

**H. Extra Rental Vehicle:** A rental vehicle that Ryder rents to you for short-term use as described in Paragraph 2F.

**I. Hazardous Material:** Any cargo, property, or hazardous material in a quantity which requires placarding by the United States Department of Transportation, and any medical, bio-hazardous, or radioactive waste.

**J. Liability Insurance:** The liability insurance described in Paragraph 10A and provided by the party designated on the Schedule A that covers the Vehicles and Substitute Vehicles.

**K. Maintenance Facility:** Ryder's facility that maintains the Vehicles and is listed on each Schedule A or another maintenance facility designated by Ryder.

**L. Physical Damage:** All damage, loss, or theft of or to any Vehicle or Substitute Vehicle.

**M. Replacement Rental Vehicle:** A rental vehicle that Ryder rents to you while a leased Vehicle is out of service for repair of physical damage as described in Paragraph 2E.

**N. Ryder:** Ryder Truck Rental, Inc., d.b.a. Ryder Transportation Services, the lessor under this Agreement.

**O. Schedule A Value:** A Vehicle's Original Value as shown on its Schedule A, less the total depreciation which has accrued for such Vehicle computed in accordance with the Schedule A, plus all unexpired licenses, applicable taxes (including personal property taxes and Federal Heavy Vehicle Use Taxes), prepaid interest and other expenses previously incurred by Ryder relating to the Vehicle, prorated to the date of sale or computation.

**P. Substitute Vehicle:** A vehicle provided by Ryder at no extra cost when any Vehicle becomes temporarily inoperable as a result of mechanical failure under the conditions described in Paragraph 2D of this Agreement.

**Q. Vehicles:** The vehicles and equipment that are listed on the Schedule A(s) to this Agreement.

**R. You/your:** The lessee under this Agreement.

| RYDER TRUCK RENTAL, INC., D.B.A. RYDER TRANSPORTATION SERVICES | Service Express, Inc. |
|---|---|
| (Ryder) | (You) |
| By _Ed M_____ | By _Barry M Naughton_ |
| Name _ED McDONNELL_ | Name _BARRY McNAUGHTON_ |
| Title _GM_ | Title _PRESIDENT_ |
| Date _6/27/00_ | Date _6/24-00_ |
| Witness _Lorraine M Jardin_ | Witness _Kid Wyatt_ |

9-52 (3/98)



## AMENDMENT TO TRUCK LEASE AND SERVICE AGREEMENT

**THIS AMENDMENT**, dated April 20, 2022, is by and between **US Logistics Solutions, Inc.** ("Customer"), and **Ryder Truck Rental, Inc.** ("Ryder") to amend, change, and modify the Truck Lease and Service Agreement between Ryder and Customer (as successor in interest to Forward Air Solutions, Inc. ("Original Lessee")) dated June 14, 2000 (the "Agreement").

WITNESSETH:

WHEREAS, Ryder and the Original Lessee entered into the Agreement and one or more Schedules to the Agreement (collectively, the "Schedule As"), and any amendments thereto, for the leasing of certain vehicles (collectively, the "Vehicles") by way of an Assignment dated September 8, 2008;

WHEREAS, the Original Lessee entered into a transaction pursuant to which it was acquired by, or merged with and into, Customer (the "Transaction");

WHEREAS, Ryder and Customer now desire to amend the Agreement and the Schedule As to correctly reflect Customer's name as, "US Logistics Solutions, Inc.".

NOW THEREFORE, notwithstanding anything in the Agreement or the Schedule As to the contrary, Customer and Ryder agree as follows:

1. <u>Delete</u> every reference to "Service Express, Inc." or "Forward Air Solutions, Inc." in the Agreement and the Schedule As, and in lieu thereof, <u>substitute</u> the name, "US Logistics Solutions, Inc.".

2. Customer acknowledges, agrees, represents, and warrants to Ryder that, by operation of the Transaction, it has assumed all of the Original Lessee's right, title, and interest in and to the Agreement, the Schedule As and the use of the Vehicles, including, for the avoidance of doubt, all Vehicles listed on Schedule As executed in the Original Lessee's name after the close of the Transaction.

3. Customer acknowledges, agrees, represents, and warrants to Ryder that, by operation of the Transaction, it has assumed all of the obligations and liabilities imposed upon the Original Lessee pursuant to the Agreement and the Schedule As, including, without limitation, the obligation to make all payments due Ryder in accordance with the Agreement.

4. All other terms of the Agreement and the Schedule As, except those expressly modified herein, shall remain in full force and effect. This Amendment supersedes all oral negotiations and prior and contemporaneous writings, and is intended as the final expression of the parties' agreement, with respect to the subject matter hereof. All capitalized terms used in this Amendment shall have the same meaning as the capitalized terms used in the Agreement, unless otherwise defined herein.

**IN WITNESS WHEREOF,** the parties hereto have executed this Amendment

**Ryder Truck Rental, Inc.** ("Ryder")

By: _____ (signature)

Print Name: Tim Myhaver

Title: Group Director National Sales

Date: 5/5/22

**US Logistics Solutions, Inc.** ("Assignee")

By: _____ (signature)

Print Name: Kyle Sherwood

Title: VP Support

Date: 05/02/22



# AMENDED AND RESTATED ASSUMPTION AGREEMENT
## (TLSA Transfer)

THIS AMENDED AND RESTATED ASSUMPTION AGREEMENT is dated April 20, 2022, and entered into by and between **US Logistics Solutions, Inc.**, whose principal address is 18727 Kenswick Drive, Humble, TX 77338 ("**Assignee**"), and **Ryder Truck Rental, Inc.**, a Florida Corporation, whose principal address is 11690 NW 105th Street, Miami, Florida 33178 ("**Ryder**").

## WITNESSETH

WHEREAS, Ryder and Forward Air Solutions, Inc. (the "**Original Lessee**") entered into a Truck Lease and Service Agreement dated June 14, 2000 (the "**Agreement**"), and any amendments thereto, for the leasing of the Vehicles on certain Schedule As, and any amendments thereto (the "**Vehicles**", Exhibit A attached hereto), by way of an Assignment dated September 8, 2008;

WHEREAS, the Original Lessee was subsequently made an affiliate of another Ryder lessee, Central States Trucking Co., and all of its lease Vehicles were transferred to a different Truck Lease and Service Agreement (the "**CST TLSA**") by way of an Affiliates Amendment dated September 13, 2016;

WHEREAS, the Original Lessee entered into a transaction pursuant to which it was acquired by, or merged with and into, Assignee (the "**Transaction**");

WHEREAS, as a result of the Transaction, Assignee became unaffiliated with Central States Trucking Co. and could no longer operate under the CST TLSA;

WHEREAS, Assignee and Ryder entered into an Assumption Agreement dated April 15, 2021 (the "**Assumption Agreement**"), whereby Assignee assumed the above subject lease and the Vehicles, but erroneously transferred such leases to a new Truck Lease and Service Agreement rather than the Agreement; and

WHEREAS, Assignee now desires to ratify its assumption of the above subject lease and the Vehicles and transfer the Vehicles to the Agreement as of the Effective Date of the Assumption Agreement.

THEREFORE, in consideration of the mutual promises and covenants herein and other good and valuable consideration, the parties do hereby agree as follows:

1.  Assignee assumed and assumes all of the Original Lessee's right, title, and interest in and to the Schedule As and the Vehicles.

2.  Assignee also assumed and assumes all obligations and liabilities imposed upon the Original Lessee pursuant to the Schedule As (but under the Agreement), including, without limitation, the obligation to make all the payments due to Ryder in accordance with the terms thereof effective as of April 15, 2021 (the "**Effective Date**").

3.  As of the Effective Date, the Vehicles and the related Schedule As, are hereby transferred to, incorporated within, made subject to, and exclusively governed by the Agreement.

4.  This Agreement will be binding on the parties hereto, their successors, legal representatives and assigns. This Agreement constitutes the entire and complete agreement and understanding between the parties concerning the subjects contained herein.

IN WITNESS WHEREOF, the parties' duly authorized representatives have executed this Agreement.

| **Ryder Truck Rental, Inc.** ("**Ryder**") | **US Logistics Solutions, Inc.** ("**Assignee**") |
|---|---|
| By: _[signature]_ | By: _[signature]_ |
| Print Name: Tim Myhaver | Print Name: Kyle Sherwood |
| Title: Group Director National Sales | Title: VP Support |
| Date: 5/5/22 | Date: 05/02/22 |

Page **1** of **2**

**EXHIBIT A**

**Vehicles Being Assumed**
(Ryder Unit Nos.)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 200139 | 249550 | 249641 | 289393 | 294118 | 756745 | 790899 | 814247 |
| 221823 | 249551 | 249642 | 289394 | 294120 | 756957 | 790900 | 814250 |
| 246196 | 249552 | 249646 | 289395 | 294121 | 756966 | 791000 | 814251 |
| 248880 | 249553 | 249647 | 289396 | 294122 | 757201 | 791200 | 814253 |
| 248882 | 249557 | 249648 | 289397 | 294123 | 757202 | 791201 | 814254 |
| 248883 | 249558 | 249649 | 289398 | 294124 | 757229 | 791211 | 814255 |
| 248884 | 249559 | 249650 | 289399 | 294125 | 757230 | 791212 | 814256 |
| 248888 | 249564 | 249677 | 289400 | 294126 | 775666 | 791218 | 814257 |
| 248889 | 249565 | 249680 | 289401 | 294127 | 775796 | 791219 | 814258 |
| 248890 | 249566 | 249681 | 290177 | 294128 | 775797 | 791224 | 814259 |
| 248891 | 249567 | 249682 | 290178 | 294129 | 775798 | 791225 | 814260 |
| 248892 | 249568 | 249687 | 290180 | 294130 | 775799 | 794717 | 814261 |
| 248896 | 249569 | 249688 | 290181 | 294131 | 778839 | 794718 | 826566 |
| 248897 | 249570 | 249689 | 290182 | 294132 | 778840 | 794719 | 826567 |
| 248904 | 249571 | 249691 | 290183 | 294133 | 778850 | 794725 | 826568 |
| 248905 | 249588 | 249692 | 290192 | 294137 | 778950 | 794726 | 826569 |
| 248906 | 249601 | 249777 | 290193 | 294138 | 778953 | 794727 | 826570 |
| 248911 | 249602 | 249778 | 290194 | 294139 | 779028 | 794912 | 826571 |
| 248912 | 249603 | 249780 | 290195 | 294140 | 779029 | 794913 | 826572 |
| 248913 | 249606 | 249781 | 290196 | 294141 | 779066 | 795277 | 826575 |
| 248914 | 249616 | 249782 | 290197 | 294142 | 779067 | 795278 | 826576 |
| 249056 | 249617 | 249791 | 290198 | 294144 | 779122 | 795279 | 826577 |
| 249208 | 249618 | 249792 | 290199 | 294145 | 779123 | 795707 | 826578 |
| 249392 | 249619 | 249793 | 294092 | 294146 | 779178 | 796765 | 826579 |
| 249393 | 249620 | 249794 | 294096 | 294147 | 779179 | 796971 | 826580 |
| 249394 | 249622 | 250647 | 294097 | 294148 | 779414 | 802125 | 826581 |
| 249399 | 249623 | 250648 | 294098 | 294149 | 779415 | 802126 | 826582 |
| 249400 | 249624 | 250649 | 294100 | 294150 | 779416 | 804535 | 826583 |
| 249401 | 249625 | 250650 | 294101 | 294151 | 789378 | 810860 | 826584 |
| 249402 | 249628 | 258880 | 294102 | 294152 | 789463 | 813268 | 826585 |
| 249403 | 249629 | 258881 | 294103 | 294153 | 789883 | 813269 | 867339 |
| 249404 | 249631 | 262492 | 294104 | 294154 | 789902 | 813270 | 867340 |
| 249405 | 249632 | 272126 | 294105 | 294156 | 789908 | 813825 | 867341 |
| 249406 | 249633 | 283609 | 294106 | 294157 | 789911 | 813826 | 867342 |
| 249409 | 249634 | 283610 | 294107 | 294158 | 789921 | 813827 | 867343 |
| 249410 | 249635 | 283611 | 294108 | 298984 | 790712 | 813828 | 867344 |
| 249413 | 249636 | 283612 | 294109 | 669025 | 790713 | 814210 | 877878 |
| 249414 | 249637 | 283613 | 294110 | 669026 | 790855 | 814211 | 877879 |
| 249419 | 249638 | 286633 | 294115 | 669027 | 790856 | 814212 | 877880 |
| 249420 | 249639 | 286634 | 294116 | 756743 | 790860 | 814245 | 879923 |
| 249421 | 249640 | 289392 | 294117 | 756744 | 790861 | 814246 | 879924 |

https://rydertruck.sharepoint.com/sites/FMSLaw/Shared Documents/General/KMM/US Logistics Solutions, Inc/Amended and Restated Assumption and TLSA Transfer Agreement 04.20.22.docx
KMM200422